# UNITED STATES DISTRICT COURT

EASTERN   DISTRICT OF   CALIFORNIA

—oOo—

**FILED**

JUN 2 5 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

UNITED STATES OF AMERICA
v.

Jimmie Allison Perryman
Jimmie Deshone Griffen

**CRIMINAL COMPLAINT**

CASE NUMBER:

2:09 - MJ  206  KJM

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about **February 17, 2008**, in **Sacramento** County, in the Eastern District of California defendant(s) did, (Track Statutory Language of Offense)

▸ **Conspire to Possess with Intent to Distribute 500 Grams or More of a Mixture or Substance Containing Cocaine**

in violation of Title **21**, United States Code, Section(s) **846 and 841(a)(1)**. I further state that I am a(n) Task Force Officer with the Drug Enforcement Administration and that this complaint is based on the following facts:

▸ **See Attached Affidavit of Detroit Police/DEA Task Force Officer Shawn Reed**

Continued on the attached sheet and made a part of this complaint:  **X**  _[signature]_

Signature of Complainant
Shawn Reed, Detroit Police/DEA Task Force Officer

Sworn to before me, and signed in my presence
June 25, 2009                                at    Sacramento, California

Date                                                City           State

Honorable Kimberly J. Mueller
United States Magistrate Judge                     _[signature]_

Name of Judge        Title of Judge        Signature of Judge

## AFFIDAVIT

I, Shawn Reed, being duly sworn, do depose and state:

1. I am an officer with the Detroit Police Department. I have been a sworn police officer for approximately ten years. For the past six years I have been a member of the Detroit Police Department Narcotics Section. I am currently assigned as a task force officer to the United States Drug Enforcement Administration (DEA) for the specific purpose of investigating narcotics trafficking.

2. I have received specialized training in the investigation of controlled substance offenses from the Detroit Police Department, the Michigan State Police, the United States Department of Homeland Security and the DEA. During my training, I received specialized instruction in the Controlled Substance Act, Title 21 United States Code, including but not limited to Sections 841 (a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively. I have received specialized training regarding criminal organizations engaged in conspiracies to manufacture and/or possess with the intent to distribute cocaine, cocaine base, heroin, methamphetamine, marijuana and other dangerous drugs prohibited by law. I have received further training in search and seizure law and many other facets of drug law enforcement. I have participated in over 500 narcotics related search warrants and arrests.

3. During the course of my employment as a Detroit Police Officer, I have participated in numerous criminal investigations and have gained knowledge and experience by working with other federal agents and police officers. I have participated in numerous Federal and State search warrants involving the aforementioned listed controlled substances, the seizure of narcotics- related records and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and

1

electronic surveillance and various types of infiltration, including undercover agents, informants and cooperating sources. Through these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle and safeguard narcotics, to distribute narcotics, and to collect and launder related proceeds.

4. The information contained in this affidavit is based upon my personal observations, observations of other law enforcement officers, my review of official police and government reports, and consultation with other agents and officers involved in the investigation. Because this affidavit is being submitted for the limited purpose of obtaining an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary and appropriate to establish the appropriate foundation for the issuance of an arrest warrant.

5. This affidavit is submitted in support of a request that a complaint and arrest warrant be issued for the following persons:

**JIMMIE ALLISON PERRYMAN**
(Date of Birth: 11-16-59)

**JIMMIE DESHONE GRIFFEN**
(DOB: 7-18-77)

for violation of Title 21 United States Code, Sections 846 and 841 (a) (1), Conspiracy to Possess with the Intent to Distribute more than 500 grams of a mixture or substance containing a detectable amount of cocaine.

## STATEMENT OF PROBABLE CAUSE
## ARREST OF DRUG COURIERS IN SACRAMENTO, CALIFORNIA

6. On February 17, 2008, at approximately 10:00 a.m., DEA Special Agent Jim Delaney and assisting officers contacted PATRICK STEVENS and SHAUNITA BROOKS on board an eastbound train during a scheduled stop at the Amtrak Station, 401 I Street, Sacramento, California. S/A Delaney had previously received information that morning from a confidential source (CS)

2

about suspicious travel habits of two passengers on board the train. S/A Delaney conducted a consensual encounter with STEVENS and BROOKS to follow up on information provided by the CS. During the encounter, STEVENS and BROOKS both consented to a search of their sleeping berth and luggage.

7. The search of a black suitcase claimed by STEVENS resulted in discovery of three kilogram sized bricks of suspected cocaine in a vacuum-sealed plastic bag. This substance was seized and placed into evidence in connection with the investigation as DEA Exhibit One. It was later submitted to the DEA Western Regional Laboratory (DEA Lab). Testing of Exhibit One at the DEA Lab revealed that the substance tested positive for cocaine hydrochloride and had a net weight of 2,972 grams.

8. The search of a blue roll-away bag claimed by BROOKS resulted in discovery of two kilogram sized bricks of suspected cocaine. This substance was seized and placed into evidence in connection with the investigation as DEA Exhibit Two. Later testing of Exhibit Two at the DEA Lab revealed that it tested positive for cocaine hydrochloride and had a net weight of 2,011 grams.

**STATEMENTS OF COURIERS IDENTIFYING SOURCE AND DESTINATION OF COCAINE SEIZED**

9. S/A Delaney advised BROOKS of her rights and she agreed to waive them. BROOKS told S/A Delaney that she had been hired by JIMMIE PERRYMAN to transport cocaine from San Francisco to Detroit. BROOKS indicated that PERRYMAN admitted to her that he was a cocaine trafficker. PERRYMAN introduced STEVENS to BROOKS. PERRYMAN told her that STEVENS was a friend of PERRYMAN'S son, JIMMIE DESHONE GRIFFEN.

10. BROOKS said that she made three or four trips to transport cocaine for PERRYMAN. The trips occurred from December of 2007 through February 17, 2008. Each of these trips involved BROOKS flying from Detroit to San Francisco. She then returned to Detroit by Greyhound Bus or Amtrak. On the first two trips STEVENS and GRIFFEN accompanied her. The initial trip took place before Christmas of 2007 and involved scouting the Greyhound

3

Bus system for police presence. The second trip, which occurred shortly after Christmas of 2007, involved transportation by Greyhound Bus of five to ten kilograms of cocaine. During the third trip BROOKS was accompanied on Amtrak by an unidentified man she knew to be a friend or associate of PERRYMAN.

11. On every trip to San Francisco BROOKS was picked up at San Francisco International Airport by MICHAEL DENNIS. Except for the initial trip to scout police presence on Greyhound, DENNIS would take BROOKS' luggage and then return it with a new lock on the outside. BROOKS was aware that DENNIS had placed five to ten kilograms of cocaine in her luggage. DENNIS would then transport BROOKS, her companions and the luggage to the bus or train station for the return trip to Detroit. Each of these return trips passed through highways or rail lines located in the Eastern District of California.

12. STEVENS also waived his rights and gave a statement to S/A Delaney. STEVENS knew GRIFFEN by the names "Shaun" or "Jeezie." STEVENS was aware that PERRYMAN is GRIFFEN'S father. GRIFFEN had previously paid for a lawyer to represent STEVENS in a criminal case unrelated to this investigation. GRIFFEN suggested that STEVENS could work off the debt by transporting cocaine from California to Michigan.

13. STEVENS admitted taking three previous roundtrip journeys from Detroit to San Francisco with GRIFFEN. The first trip was a test run for police presence taken with GRIFFEN and BROOKS before Christmas of 2007. The second trip occurred shortly after Christmas of 2007. GRIFFEN and BROOKS accompanied STEVENS. The three took an airplane to San Francisco and then returned to Detroit on a Greyhound Bus. STEVENS believed he and his two companions were carrying five kilograms of cocaine in their luggage. STEVENS earned $1,000 for the second trip. The third trip occurred in January of 2008. GRIFFEN and unknown older man accompanied STEVENS on a flight from Detroit to San Francisco. The three then returned to Detroit

4

with five kilograms of cocaine in their luggage. STEVENS again earned $1,000 for the trip.

14. On every occasion that he travelled to San Francisco, STEVENS was picked up at the airport by MICHAEL DENNIS. DENNIS took STEVENS' luggage on every occasion except for the initial scouting trip and returned it with a new lock placed on the outside of the bag. STEVENS believed on these occasions that DENNIS had placed cocaine inside the luggage to be transported back to Detroit. STEVENS told S/A Delaney that he expected to make $1,500, plus expenses, for transporting the five kilograms of cocaine seized on February 17, 2008.

**RECORDED TELEPHONE CALLS TO GRIFFEN AND PERRYMAN**

15. During the afternoon of February 17, 2008, S/A Delaney arranged for STEVENS and BROOKS to conduct several recorded telephone calls to PERRYMAN and GRIFFEN. Both were instructed to say that their train had been stopped in Truckee, California. They were further instructed to say that drug-detection trained K-9s were sniffing luggage from the train. BROOKS spoke primarily with PERRYMAN, while STEVENS spoke primarily with GRIFFEN.

16. GRIFFEN assured STEVENS in the recorded conversations that police dogs would not be able to detect the cocaine inside his luggage. GRIFFEN tried to convince STEVENS to get back on the train. STEVENS protested that he did not want to go to prison. GRIFFEN assured STEVENS that the cocaine was packaged so that the dogs would not be able to detect it. GRIFFEN also spoke with BROOKS and told her that she had nothing to worry about because she did not have the key to the locks on the luggage. GRIFFEN attempted to calm BROOKS by telling her that the circumstances of the train stop sounded like a random drug enforcement stop. It did not appear to GRIFFEN that the police had a specific tip that BROOKS was transporting cocaine.

5

17. PERRYMAN in his recorded conversations also assured BROOKS that the cocaine was too tightly wrapped for the dogs to smell it. In response to her claim that she had missed the departing train, PERRYMAN promised to wire BROOKS money so that she could catch the bus. PERRYMAN instructed BROOKS to catch the Skyline Bus to intercept the train further to the east.

18. S/A Delaney later confirmed that PERRYMAN wired $200 to BROOKS through Western Union on February 17, 2008. One of the phone numbers used by BROOKS and STEVENS that same afternoon to contact GRIFFEN was (313) 450-5153. S/A Delaney later confirmed that the subscriber to (313) 450-5153 was JIMMIE GRIFFEN, 41462 West Archwood Drive, Belleville, Michigan.

19. On February 26, 2008, S/A Delaney obtained photographs of JIMMIE A. PERRYMAN and JIMMIE DESHONE GRIFFEN from DEA in Detroit. BROOKS and STEVENS positively identified PERRYMAN and GRIFFEN as the owners of the five kilograms of cocaine seized on February 17, 2008. Prior to February of 2008, I had participated in investigation into suspected drug trafficking activities in Michigan by JIMMIE DESHONE GRIFFEN. Following the arrest of BROOKS and STEVENS, I have been assisting S/A Delaney in the investigation into drug trafficking activities by GRIFFEN and his father JIMMIE ALLISON PERRYMAN.

20. Based upon the above information, your affiant believes that there is probable cause to believe that JIMMIE ALLISON PERRYMAN and JIMMIE DESHONE GRIFFEN violated Title 21, United States Code, Sections 846 and 841 (a) (1), conspiracy to possess with the intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of cocaine.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
Shawn Reed, Detroit Police Department
And Task Force Member
Drug Enforcement Administration


Subscribed and sworn to before me
This 25th day of June, 2009
_____
Honorable Kimberly J. Mueller
United States Magistrate Judge

                                       Approved as to Form:
                                       _____
                                       Todd D. Leras
                                       Assistant United States Attorney